Good morning, Your Honors. May it please the Court, my name is Barbara Ransom, and I represent Plaintiff Appellant in this matter. Your Honor, the Honorable District Court Error, as a matter of law and fact, this circuit has longstanding tradition in Payne. Payne says that in the 14L, that the burden defendant must file a motion, must file an answer to the complaint, and plead an affirmative defense. A motion dismissed pursuant to Section Rules 12b-6 is not appropriate in this case, because 12b-6 talks about the federal court's jurisdiction. When you look at Payne in conjunction with Albino, another ruling from this circuit, Albino says there's a procedure that needs to be followed when one argues exhaustion. In an exhaustion case pursuant to Section 1415L, the first step is for the plaintiff, the defendant, to file an answer to the complaint with affirmative defenses. Well, let me ask you this. Does Albino stand for the proposition that courts may dismiss for a failure to exhaust under 12b-6 in the rare event that a failure to exhaust is clear on the face of the complaint? Does it stand for that proposition? It does. Payne does stand for that proposition. Albino does not. Albino stands for the proposition that there is a particular procedure that needs to be followed, and that procedure requires that the defendant pleads through an affirmative defense, because this is a statute of limitations. Doesn't the context of Albino matter, though, that it arose pursuant to the Prison Litigation Reform Act, where the issue of exhaustion is factually complex, frequently, and there are exceptions to exhaustion under the Prison Litigation Reform Act? And shouldn't we consider that context in which Albino was decided? Judge Bolton, when the circuit ruled on Albino, it made clear that it was looking at Payne also. It spoke directly about Payne and realized that the rulings that it made under the PLRA were also being used by the district courts to look at exhaustion under the IDEA. So it was not ruling specifically for Payne, for the PLRA, and it had similarities between the PLRA's exhaustion requirement and the IDEA's exhaustion requirement. So, no, it wasn't limited. The circuit did not limit itself just to a PLRA. And when the court, the circuit looked at how do you decide whether or not to look at an exhaustion issue, it said what should happen is file your, as an affirmative defense, number one. And number two, it said that discovery was possible and that the matter could be resolved in a preliminary hearing by the district court if there were some dispute. Well, and this is... Oh, go ahead. I'm sorry. Doesn't Albino also say that if there are no disputed issues of fact, the affirmative defense may be resolved in a motion to dismiss? But, Your Honor, here the only facts in this case, because it is on a motion to dismiss, the only facts are the facts that are in plaintiff's well-plaid complaint. So that means they're undisputed? Yes, Your Honor. So if the court takes everything in the complaint as true and nevertheless grants a motion to dismiss as a matter of law, why does it matter that no pleading has been filed by the defendant? But, Your Honor, that's not what was done. What was done in this particular case, Judge, the Honorable District Court, looked at our allegations in the complaint. The allegations in the complaint was that there was a policy and practice that discriminated against children with In a way it does, Your Honor, because you can't just look at the procedural aspects of a case. You have to look at what underlies those procedural aspects. Well, that's not absolutely correct because a complaint can be dismissed procedurally without ever looking at the merits on the statute of limitations or many other procedural mechanisms may be used to dismiss a complaint without ever going into the I'm having difficulty understanding why the district court erred by granting the motion to dismiss if the facts were undisputed. Well, Your Honor, what happened was that the defendants argued in their brief that this wasn't an issue involving, this was not an issue, this was an issue that could be resolved because it involved communications between home and school and that been worked out. Plaintiffs argued in their complaint that this was not just about communication because there had been ongoing communication throughout that school year between the home and the school. Plaintiff's argument was that there was a problem because of the rule, the discriminatory rule that said the aides could not talk to the teacher, could not talk to the parents at all. I guess I'm confused about, because you're saying, okay, it has to be at summary judgment and not at a motion to dismiss. If, why would the result be different and what might discovery produce that would be relevant to the issue of exhaustion? Why isn't it all already here? Well, Your Honor, because in a summary judgment motion, you get additional facts. You have the different here. Your Honor, we could bring in affidavits and testimony from parents who have been in the same situation. We could bring in the testimony from the aide who was the aide in question in this particular situation. But how does that, how would that affect the exhaustion, whether you have to exhaust or not? Well, Your Honor, the courts... I understand why parents don't want to have to exhaust, but I'm just having, I'm having a hard time seeing how any of that would make a difference in ruling on exhaustion. Yes, Your Honor. Well, an exhaustion issue, exhaustion has to be clear on its face. But Albino says you don't have to plead exhaustion. That there's no requirement to plead exhaustion. So we did not plead exhaustion of Section 1415L because it's not required under the Albino standard. But didn't you plead facts that made it clear to the trial judge that you didn't exhaust? Yes, Your Honor. We, no, well, not exactly. We, there was a dispute about the admission of a, of a settlement agreement in this case that goes to the issue of exhaustion. And that settlement agreement, the submission of the settlement agreement really talked about the IDEA. And there was a difference between exhaustion pursuant to an IDEA claim and exhaustion when you're saying we're not pleading IDEA. All right. So what remedies based on AL's claims does AL seek that are not available under the IDEA? Because I think that seems to be, if the gravamen, if you're really, if this is really about FAPE, then? No, Your Honor. This case is not about FAPE. Beating up a child, having a child physically abused in a classroom setting has nothing to do with the provision of educational services. But isn't that your state law claim? No, well, no, Your Honor. It is an ADA claim because the discrimination in this case is on its face, the rule that they have in place that forbids any discussion with the aide and the parents at all. But isn't that the very type of issue that an IDEA claim would resolve? That is the appropriate way that communication should be made about the child by the school to the parents? No, Your Honor. Just like in Frye. If we take a look at Frye, the issue in Frye was whether or not the wonder the dog could be an accommodation for the child. In Frye, the court took a really great leap when it said, look, we're looking at this not as an IDEA issue, but we're looking at this as an ADA accommodation. It would have been a simple matter if the school, Napoleon School District, had turned around and put into their to the child's IEP and said, you can have a service animal. But don't, when you do IEPs, don't you talk about 504 claims and IDEA? I mean, they're all talked about as to what FAPE is for a particular student, right? Isn't that what they do in IEPs? Well, in an IEP team meeting, the discussion doesn't go to what FAPE, it goes only to what FAPE is. It and the policy there. Okay, so Frye says that there's, they give you three clues to whether the gravamen of a complaint against a school concerns FAPE, right? Yes, ma'am. One is, could the plaintiff had brought essentially the same claim if an alleged conduct had occurred at a public facility that was not a school? Two, could an adult at the school have pressed essentially the same grievance? And three, the history of the proceedings. In this case, why don't all three clues indicate that AIL's federal claims concern the denial of FAPE? Well, it doesn't concern a denial of FAPE, Your Honor, because when Judge Kagan, Justice Kagan, took a look at the circumstances in the Frye case, she was looking at a request for a reasonable accommodation. That has nothing to do with the ADA's, with the IDEA's supports and services. There was a request for a reasonable accommodation that the school denied. Just denying that request gave the court a choice between saying, okay, this is about the ADA, or this is a support and service. Justice Kagan decided, and it was a big decision, that no, this is about a denial, is a discriminatory act because it's a refusal to provide this accommodation. Well, let's say we don't, let's say we don't agree with you and say that exhaustion can be dealt with on, on a 12B6. Is a settlement exhaustion? I'm sorry, Your Honor. Is a settlement exhaustion? Well, Your Honor, Your Honor. Because here there was a settlement, right? There was a settlement, Your Honor. That settlement settled all of plaintiffs, and that's our allegation. The settlement settled all of plaintiff's IDEA claims. When the teacher physically assaulted the child, if this had been a Title IX plaintiff or a Title VI plaintiff before the court, there would be no question that you, you would have to do another, jump through another hoop. Here you have a little girl who only because of her disability was this rule in place. This rule was not in place for anybody else. It was only for the children in the school who are children with disabilities. The parent had another child who attended that school. There was never any such rule or restriction about people at the school who were not the teachers. But Judge Callahan's question is, does the settlement of an IDEA claim, rather than proceeding to the due process hearing, constitute exhaustion? For IDEA claims, the courts say, the courts say they do not. Your Honor, I see that my time is up, and I'd like to reserve some time. Thank you. Good morning, Your Honors. May it please the Court, Sloan Simmons on behalf of Appellee Clovis Unified School District and Appellee Woods as well. I'd like to start with addressing various points that the three of you have just discussed with opposing counsel. One, I think Paul G., this Court's opinion within the last several months, as binding precedent forecloses, the question of, does a settlement within an OAH due process proceeding constitute exhaustion in terms of IDEA administrative remedies? And Paul G. squarely holds, consistent with the range of authority that's existed around the country up and until the Ninth Circuit's opinion, that in exhaustion for a range of reasons. From your perspective, can you tell me, obviously there was an amicus brief filed, but from your perspective, can you tell me what your position is? What are the practical and legal consequences of holding that exhaustion is an affirmative defense that can only be raised by a motion for summary judgment? What does that mean? Your Honors, and I think part of the concerns, well, let me, to answer that question, let me start in part with the original question to opposing counsel, which is, what did Payne and Albino stand for and mean before Frye? Payne said you could proceed with an unenumerated rule 12 motion to seek dismissal, even under the change standard for exhaustion of administrative remedies reached in the en banc Payne opinion. It was then Albino. Some circumstances. Oh, Payne, yeah. And then Albino was the opinion by this court that said, no, you need to plead it as an affirmative defense. Summary judgment is going to usually be the scenario you use, and on the rare occasion, on the face of the complaint, you'll still be able to utilize it as a 12B6 to dismiss the complaint. Now, the reference to the IDEA within Albino, there's a fair argument that that was dicta. I know this court and other opinions have perhaps looked to it, at least the district courts have from time to time, to say, okay, Albino takes Payne and says the norm will be discovery and a summary judgment. We think Albino, though, plainly holds that if on the face of a complaint, failure to exhaust is at issue, then you can proceed with that mechanism, and Frye makes that even more clear, in our view. To the extent Frye says, we look at the gravamon of the complaint. We look at what has the plaintiff alleged, and does the allegations and relief sought derive from or seek relief that, in essence, is something that could be addressed through FAPE and the IDEA, then it's subject to dismissal. Frye was a motion to dismiss case, just like this one. Well, I think clearly, I guess you're, I'm clearly sort of, school districts don't really want federal courts telling them without, how they should handle a student without any knowledge about what the, not having the expertise of having it percolate through the system. So I get where you're coming from, but I guess, hypothetically, let's say if a teacher of a student with a FAPE were to assault the student, could the student state a federal claim against the teacher without exhausting the administrative remedies referenced in the IDEA, or would the student be limited to filing a civil action in state court? I'm trying to think of hypotheticals. Right. I'm following you, Judge Callahan. I think it depends on the, A, the totality of the complaint and the context in which that potentially alleged assault occurred. And I want to answer your hypothetical, but also bring it back to what's actually at issue in our complaint in a minute. To be clear, what the exhaustion requirement under the IDEA doesn't do is foreclose ultimately 504 and ADA claims that relate to those IDEA claims from eventually making their way to court. And in fact, Judge Kagan's footnote 10 in Frye really does well to address some concerns that Judge Alito had and kind of address this issue, that it's not a matter of limited remedies that's just under the IDEA, or remedies that are specifically reserved for the 504 and ADA, or state law claims for tort, such as assault or negligence, et cetera. In terms of the federal claims that can be limited by the IDEA exhaustion requirement, because the state tort claims aren't. And in fact, they'd be told during any due process proceedings occurring in which those allegations were at issue. And so the impact of requiring parties to first exhaust is actually in the long run, not only better as a matter of educational expertise as to how perhaps that alleged incident of assault that relates to a behavior support plan was. So what's your answer to Judge Callahan's question? What's your short answer? Short answer is that it's better for districts and for students that OAH hear these issues first, and it doesn't foreclose the remedies going forward. But hypothetically, is there an assault that with a student that has a FAPE that could stand on its own? Absolutely. What would be an example of that? So students on the playground and unrelated to the student's disability or unrelated to implementation of the student's IEP, yard duty or someone physically assaults. I mean, I was here before this court a couple months ago on a qualified immunity case. We talked about the student's head to a tree. That's the type of physical injury, tortious or even constitutional in nature that is not a matter of... That would be in 1983, not an ADA or a Rehabilitation Act claim. Right. Agree. And that would not require exhaustion. There is a degree of tort unrelated to a student's... Well, I could still see, depending on the facts, that exhaustion might still be required in that instance, too. But there can be a form of tort or harm pled in a complaint that doesn't necessarily require IDEA administrative exhaustion. That is, the complaint we have here clearly does relate to the student's IEP services, supports, implementation of those services and supports, implementation of training that the parent believed should have been implemented better by the teacher and aides. The relief sought in the due process complaint, which, by the way, judicial notice was requested of that complaint, along with the settlement. There was no objections by appellant when those were put before the court on the motions to dismiss at the district court level. The due process complaint and the settlement, the allegations in the due process complaint track very closely, if not in many instances, identically to what ultimately were the iterations of the complaint here in federal court, the original First Amendment and then the Second Amendment complaint. And they all really do tie back to issues that can be remedied through the IDEA before OAH, which was established by both case law and OAH decisions that the district court had before it and cited and which are cited in the brief before this court today. I would also note that with the issue of what's at issue, what's the relief sought in this complaint? I think I heard opposing counsel indicate, and at least in the reply, suggest that what this is about are the two incidents of alleged harmful contact, right? Yeah, the toenail incident. The toenail and then the incident in the class and improper implementation of the student's behavior support plan. If you look at the complaint, if you look at what is actually alleged in the 504 and the ADA claim, the core issue in the ADA claim is the concept of segregation of the student from non-disabled peers. Segregation in the world of special education means lack of inclusion, i.e. least restrictive environment. It's a central tenet of IDEA. It's an issue litigated regularly in the OAH due process context as well as before this court. The Rachel H. opinion is the one that kind of drives that analysis. That's unquestionably an issue that could be resolved before OAH. Then there's the issue of communication, adequacy of the communication program and policy between the student's special education aides and the parents. Again, another issue regularly and repeatedly addressed in a due process complaint before OAH. As far as the remedies that follow after that, in both claims there's out-of-pocket expenses. If you look to the due process complaint, same remedy was sought before OAH. Then there's attorney's fees and any other relief that's available. We don't even have a situation here in which the actual ADA and 504 claims are driven off a claim for damages of say emotional distress or physical injury that might in a way distinguish it from those claims which exhaustion are required for. Because the core of the actual relevant facts as alleged in the complaint and the claims themselves directly correspond to claims, allegations and remedies that would need to be exhausted under Frye, under Payne and under Paul G. I don't know if I've done as well of a job as I'd like to, Judge Gallin, in answering your hypothetical. If there's more clarification I can provide. That was a really long answer. My apologies, Your Honor. Without any further questions, I'm willing to submit at this point. All right, thank you, counsel. Thank you. Your Honors, if I could direct your attention to footnote nine in Frye. Footnote nine in Frye is consistent with Judge Noonan, the late Judge Noonan's ruling in the dissent in Payne when it, when the court said that there is no educational purpose for assaulting a child. The IDEA is about educational purposes. It's about the impact of providing faith to a child. That has nothing to do with the two cases that predate Payne and under both, one says, yes, you're entitled to not, you don't have to exhaust. But all of these exhaustion issues relate to IDEA exhaustion. There is a difference here that I cannot express clearly enough to the court, it seems. The issue here is if you have a child who is being assaulted solely on the basis of her disability, must a parent go through an exhaustion issue under the IDEA? And the answer to that question for the Frye court was no. If there is an ADA discrimination, you do not necessarily need to go through the hoops that are required under IDEA. Thank you, counsel. Thank you to both counsel. The case just argued is submitted for decision by the court. We're going to take a brief recess. We will return at 1110 a.m.
judges: Rawlinson, Callahan, Bolton